VERONICA RAVNIKAR *vs.* SERGEI BOGOJAVLENSKY.

Middlesex. December 3, 2002. - February 3, 2003.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Libel and Slander. Privacy. Actionable Tort. District Court,* Jurisdiction. *Superior Court,* Jurisdiction.

In an action for defamation involving a false statement that the plaintiff, a physician, was dying of cancer, the judge incorrectly granted summary judgment in favor of the defendant where, because the false statement was capable of prejudicing the plaintiff's medical practice, such a statement was actionable without proof of economic damage. [629-632]

A District Court judge improperly dismissed a claim for invasion of privacy for want of subject matter jurisdiction, where the division of the District Court in which the action commenced, which was subject to the one trial system, could decide a claim that would normally fall within the exclusive jurisdiction of the Superior Court, as long as at least one other claim in the same action (in this action, a claim for defamation) was within the traditional jurisdiction of the District Court. [632-634]

CIVIL ACTION commenced in the Newton Division of the District Court Department on March 8, 1999.

The case was heard by *Dyanne J. Klein,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Paul F. Kelly (Michael Doheny* with him) for the plaintiff.

*John J. Ryan, Jr. (Emily G. Coughlin* with him) for the defendant.

COWIN, J. The plaintiff, Veronica Ravnikar, complains that the defendant, Sergei Bogojavlensky, made false statements about her health in 1998. Initially the plaintiff filed suit in Middlesex Superior Court, but, because there was no reasonable likelihood

of recovery in excess of $25,000, the action was dismissed for lack of jurisdiction pursuant to St. 1996, c. 358, § 4.[1] The plaintiff then sued the defendant in the Newton Division of the District Court Department, alleging defamation, intentional interference with business relations, invasion of privacy (pursuant to G. L. c. 214, § 1B), and unfair competition (pursuant to G. L. c. 93A, § 11). The defendant moved for summary judgment on all counts. In February, 2001, a District Court judge granted the defendant's motion without a written opinion. The plaintiff appealed to the Appellate Division of the District Court, which affirmed the decision of the District Court. The plaintiff appealed from the decision of the Appellate Division and we transferred the case from the Appeals Court on our own motion.

1. *Background.* We recite the facts in the light most favorable to the plaintiff. See *Harrison* v. *NetCentric Corp.*, 433 Mass. 465, 468 (2001). Both the plaintiff and the defendant are physicians specializing in obstetrics and gynecology who practice in Massachusetts. The plaintiff was diagnosed with breast cancer in 1995 and successfully treated. In 1997, a patient who was seeing the defendant for the first time told him during an appointment that she was looking for a "new" gynecologist and she "was also going to see" the plaintiff. The defendant responded, "Oh, she's dying of breast cancer. It's such a shame. She's a young woman." After the patient stated that she would see the plaintiff anyway, the defendant reiterated that the plaintiff's condition was "terminal." The defendant later conceded that, although he had learned from colleagues that the plaintiff had cancer, he had no reason to believe that the plaintiff was terminally ill. The patient eventually went to see the plaintiff and repeated the defendant's remarks. Although the plaintiff was upset by the defendant's statement, there is no evidence that the plaintiff lost any business or suffered any other monetary damage as a result of the comment.

The plaintiff argues in this court that summary judgment was

---

[1]Statute 1996, c. 358, § 4, vests exclusive jurisdiction over civil actions with no reasonable likelihood of recovery in excess of $25,000 in the District Court.

improperly entered on both the defamation and invasion of privacy claims.[2] We address each claim in turn.

2. *Defamation.* "[The] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates . . . that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Dulgarian* v. *Stone*, 420 Mass. 843, 846 (1995), quoting *Symmons* v. *O'Keeffe*, 419 Mass. 288, 293 (1995). See *Mulgrew* v. *Taunton*, 410 Mass. 631, 632-633 (1991) (identical standard for defamation claims). The plaintiff argues, and we agree, that the defendant has failed to make the required demonstration.

To withstand a motion for summary judgment for defamation, a plaintiff must show that: (a) The defendant made a statement, concerning the plaintiff, to a third party. See *Eyal* v. *Helen Broadcasting Corp.*, 411 Mass. 426, 430-433 (1991); *New England Tractor-Trailer Training of Conn., Inc.* v. *Globe Newspaper Co.*, 395 Mass. 471, 474 (1985), and cases cited. The statement may be published in writing or some other equivalent medium (in which case it is designated as libel), or, as in this case, orally (in which case it is designated as slander). See *Draghetti* v. *Chmielewski*, 416 Mass. 808, 812 n.4 (1994); Restatement (Second) of Torts § 568 (1977).

(b) The statement could damage the plaintiff's reputation in the community.[3] See *Eyal* v. *Helen Broadcasting Corp.*, *supra* at 429; *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 853 (1975); *Poland* v. *Post Publ. Co.*, 330 Mass. 701, 704

___

[2]According to the Appellate Division, the plaintiff "did not press her appeal" from the judgment entered on her claim for intentional interference with business relations, and she conceded the G. L. c. 93A claim at oral argument before that court. The plaintiff asks that we reinstate the G. L. c. 93A claim, but her request is unsupported and does not rise to the level of proper appellate argument. We decline to reach the issue. See *Dutil, petitioner*, 437 Mass. 9, 19 n.7 (2002); Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

[3]In most cases the statement must be false. See *Bander* v. *Metropolitan Life Ins. Co.*, 313 Mass. 337, 342 (1943). Massachusetts, by statute, allows a plaintiff to recover for a truthful defamatory statement if it was published in writing (or its equivalent) and with actual malice. See G. L. c. 231, § 92. The scope of the statute, however, is limited by the provisions of the First Amendment to the United States Constitution. See *Shaari* v. *Harvard Student Agencies, Inc.*, 427 Mass. 129, 131-132 (1998).

(1953), and cases cited. See also Restatement (Second) of Torts, *supra* at § 559 ("A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him").

(c) The defendant was at fault in making the statement. See *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 347 (1974); *Jones* v. *Taibbi*, 400 Mass. 786, 797 (1987). The level of fault required varies between negligence (for statements concerning private persons) and actual malice (for statements concerning public officials and public figures). *Id.*

(d) The statement either caused the plaintiff economic loss (traditionally referred to as "special damages" or "special harm"), or is actionable without proof of economic loss. See Restatement (Second) of Torts, *supra* at § 558(d), § 575 comment b. Four types of statements are actionable without proof of economic loss: statements that constitute libel, see *Shafir* v. *Steele*, 431 Mass. 365, 373 (2000); statements that charge the plaintiff with a crime; statements that allege that the plaintiff has certain diseases; and statements that may prejudice the plaintiff's profession or business, see *Lynch* v. *Lyons*, 303 Mass. 116, 118-119 (1939). If the statement comes within one of these four exceptions, a plaintiff may recover noneconomic losses, including emotional injury and damage to reputation. See *Shafir* v. *Steele*, *supra*; Restatement (Second) of Torts, *supra* at § 622 comment b, § 623 comment a. An undamaged plaintiff may recover nominal damages.[4] See *Shafir* v. *Steele*, *supra*; Restatement (Second) of Torts, *supra* at § 623 special note on remedies for defamation other than damages.

The defendant claims that he is entitled to summary judgment because the plaintiff has failed to show that she was harmed economically by his remarks. The plaintiff does not dispute the lack of economic harm, but maintains that she may still take her case to a jury because the defendant's comments

---

[4] A plaintiff may not recover punitive damages in a defamation action. *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 860-861 (1975). G. L. c. 231, § 93.

that the plaintiff was dying of cancer were capable of prejudicing her medical practice.[5]

A statement falls within this exception to the economic harm requirement if it alleges that the plaintiff lacks a necessary characteristic of the profession. See *Lynch* v. *Lyons, supra* at 119; Restatement (Second) of Torts, *supra* at § 573 ("One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession . . . is subject to liability without proof of special harm"). The issue we decide is whether a false claim that a physician is *dying* of cancer creates an inference that that physician lacks a necessary professional characteristic. We conclude that it does.

A statement that a physician is terminally ill can discourage potential patients by creating the natural inference that death is not far off and that the physician will be distracted by her medical condition and its treatment. A potential patient hearing this type of statement could quite reasonably conclude that any relationship formed with that physician would necessarily be a brief one, and, while the relationship lasts, that the physician's ability to provide care would be impaired. Such a statement thus has the potential to damage a physician's medical practice because patients are more likely to choose a physician on whom they can rely for quality care over the long term. Today physicians compete for patients just as businesspeople compete for customers, and a doctor who cannot offer stable and reliable care to her patients faces the same competitive disadvantage as any other businessperson.[6] See, e.g., Restatement (Second) of Torts, *supra* at § 573 comment c, illustration 5; *Domres* v. *Perrigan*, 760 So. 2d 1028, 1029-1030 (Fla. Dist. Ct. App. 2000). See also *Davis* v. *Ruff*, 25 S.C.L. (Chev.) 17 (1839). It follows that, because a false allegation that a physician is terminally ill

---

[5]The plaintiff does not claim that the defendant's remarks fall within any of the other exceptions to the economic harm requirement.

[6]The defendant argues that *Golub* v. *Enquirer/Star Group, Inc.*, 89 N.Y.2d 1074 (1997), in which a disclosure that a person had cancer was alleged to be libel, is closely analogous. In that case, however, the defendant did not assert that the plaintiff was dying; on the contrary, she was allegedly "determined to fight this illness." *Id.* at 1077.

may prejudice that physician's practice, such a statement is actionable without proof of economic damage. See *Lynch* v. *Lyons, supra* at 118-119.

3. *Invasion of privacy.* The defendant argues that the District Court lacks subject matter jurisdiction to hear the plaintiff's invasion of privacy claim. This requires us to again examine how the establishment of the "one trial system" in Massachusetts has affected the subject matter jurisdiction of the District Courts.[7] The new system supplants the remand and removal procedures found in G. L. c. 231, §§ 97-107. For all cases previously governed by those procedures, St. 1996, c. 358 (enabling act), provides a mechanism by which a case may be resolved in a single trial in the District Court.[8] The enabling act grants the District Court equitable powers coextensive with those of the Superior Court in all "civil actions otherwise subject to transfer, retransfer, removal and appeal" under G. L. c. 231, §§ 97-107. St. 1996, c. 358, § 3. It also vests the District Court with exclusive jurisdiction over all civil actions in which there is "no reasonable likelihood" that damages in excess of $25,000 will be awarded, again provided that the action was otherwise subject to "transfer, retransfer, removal and appeal" under G. L. c. 231, §§ 97-107. St. 1996, c. 358, § 4.[9]

Despite the language of the enabling act, the defendant argues that, under the one trial system, a District Court may not hear an invasion of privacy claim because the Superior Court retains exclusive jurisdiction over that claim pursuant to G. L. c. 214,

---

[7]The "one trial system" was initially established by St. 1996, c. 358, for Norfolk and Middlesex counties. It has since been expanded to include Barnstable, Berkshire, Bristol, Dukes, Essex, Franklin, Hampden, Hampshire, and Nantucket counties. See St. 2002, c. 70.

[8]As we have noted, the remand and removal procedures established by G. L. c. 231, §§ 97-107, are a model of inefficiency. Under that system, a case could be handled by as many as thirteen judges and one jury in four separate courts before reaching a final resolution. *Bender* v. *Automotive Specialties, Inc.*, 407 Mass. 31, 35 (1990). The one trial system was developed to remedy this problem and reduce the resultant drain on court resources. See *id.* at 36. See also *Herman* v. *Home Depot*, 436 Mass. 210, 215 (2002).

[9]The enabling act also grants exclusive jurisdiction over civil actions to the Superior Court where there is no reasonable likelihood that the damages, if awarded, will be *under* $25,000. See St. 1996, c. 358, § 4.

§ 1B.[10] He maintains that a civil action containing such a claim is not subject to transfer, retransfer, removal, and appeal under G. L. c. 231, §§ 97-107, and is therefore beyond the scope of the one trial system. We disagree. Assuming without deciding that G. L. c. 214, § 1B, in fact grants the Superior Court exclusive jurisdiction over invasion of privacy claims, the plaintiff's action would still be subject to transfer under the traditional remand and removal system. Although the practice is disfavored, see *Maloney* v. *Sargisson*, 18 Mass. App. Ct. 341, 345 n.6 (1984), a civil action containing both a claim within the exclusive jurisdiction of the Superior Court and a claim over which the District Court has concurrent jurisdiction may be transferred to the District Court pursuant to G. L. c. 231, § 102C.[11] See M.G. Perlin & J.M. Connors, Civil Procedure in the Massachusetts District Court § 2.5 (2d ed. 1990 & 2001 Supp.). General Laws c. 231, § 102C, permits a Superior Court judge to transfer *"any* civil action" after making a determination that there is no reasonable likelihood that any damage award will exceed $25,000 (emphasis added). See Rule 29 (5) of the Rules of the Superior Court (2001). This action contains a defamation claim that falls within the District Court's traditional jurisdiction. See G. L. c. 218, § 19. It follows that, had the plaintiff made her initial Superior Court filing in a county that did not operate under the one trial system, the action could have been transferred pursuant to G. L. c. 231, § 102C.

Under the traditional system, when a civil action that includes a claim outside the District Court's jurisdiction is transferred from the Superior Court, the District Court may only act on the claims over which it has jurisdiction. See *Maloney* v. *Sargisson*, *supra* at 344 ("Quite properly, the District Court judge did not

---

[10]General Laws c. 214, § 1B, provides: "A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages."

[11]An action that does not contain at least one claim over which the District Court has jurisdiction, however, may not be properly transferred. It follows that an action consisting solely of claims over which the Superior Court has exclusive jurisdiction would be beyond the scope of the enabling act and thus not amenable to resolution under the one trial system. Cf. *Herman* v. *Home Depot, supra* at 214.

treat expressly the mutual mistake and rescission aspects of the case, as the District Courts do not, save for limited exceptions, have jurisdiction over equitable claims"). Under the new one trial system, however, the District Court may exercise the same equitable powers and jurisdiction as the Superior Court to resolve the entire case. See *Herman* v. *Home Depot*, 436 Mass. 210, 214 (2002). This interpretation of St. 1996, c. 358, is consistent with the Legislature's goal of increasing the efficiency of the court system by allowing actions in which there is no reasonable likelihood of recovery over $25,000 to be resolved expeditiously in the District Court. See *id.* at 215. A contrary holding would create "the anomalous situation of requiring bifurcated claims," at the District Court and Superior Court levels, "with separate trials and appeals." *Id.* This is hardly the result one would expect from a "one trial system." We therefore conclude that a District Court, subject to the one trial system, may decide a claim which would normally fall within the exclusive jurisdiction of the Superior Court, as long as at least one other claim in the same action is within the traditional jurisdiction of the District Court. Because this action contains a claim (defamation) that falls within the District Court's traditional jurisdictional bounds, the dismissal of the plaintiff's invasion of privacy claim for want of subject matter jurisdiction was improper.

4. *Conclusion.* Given our conclusion that the District Court has jurisdiction over the invasion of privacy claim in this case, it becomes necessary to resolve whether the plaintiff's illness was private information. Although this issue was raised by the defendant in his original motion for summary judgment and has not been waived, it was not addressed by either the District Court or the Appellate Division. We therefore vacate the decision of the Appellate Division and remand the case to the District Court for further proceedings consistent with this opinion.

*So ordered.*