The plaintiff, Siew-Mey Tam, appeals from a judgment entered in the Superior Court granting summary judgment in favor of the defendants on Tam's employment discrimination claim pursuant to G. L. c. 151B, § 4, and on her claim of intentional interference with advantageous business relations. The defendants had terminated Tam's employment as a property manager for the Federal Management Company (company), and Tam argues that the defendants' explanation for the termination provided a false reason and, as a result, her dismissal was unlawful discrimination. The defendants counter that Tam failed to offer evidence of pretext or discriminatory animus to support her claim of discrimination. We affirm, essentially for the reasons well explained in the judge's thoughtful memorandum.
Background. On March 27, 2012, defendant John Desjardins, senior property manager at the company and Tam's direct supervisor, went to Mason Place, an affordable housing property located in the Chinatown section of Boston, to reprimand the maintenance technician for losing his master keys. Desjardins, along with Tam, presented the technician with a written warning that the technician acknowledged and signed; the technician then asked to speak with Desjardins privately. The technician told Desjardins that, at that time, there were several apartments in the building that were listed as rented, but that, in fact, were unoccupied. He showed Desjardins four such apartments that appeared to be vacant.
Tam had worked as property manager at the facility since May, 2005. In addition to overseeing the day-to-day operations of the property, Tam was responsible for compliance with the U.S. Department of Housing and Urban Development (HUD) regulations. Complying with those regulations required Tam to verify that each tenant's apartment was the tenant's primary residence; in addition, as part of the annual HUD "section eight" recertification process, Tam was required to obtain an original signature from each tenant on the appropriate form. Tam was aware that failing to obtain an original tenant signature on the HUD recertification form was grounds for termination.
The following week, Desjardins returned to the facility, accompanied by Peter Lewis, the vice president of the company. The two presented to Tam a "rent roll" for the facility and asked her to identify every unit in the facility that was unoccupied. In addition to the four units Desjardins had seen the previous week, Tam identified four more unoccupied units. After reviewing the tenant files for each of those eight units, Desjardins and Lewis found that some of the tenant signatures that appeared on the HUD recertification forms looked different from the signatures on corresponding rent checks and other papers in the respective tenant files. The two concluded that some of the tenants had not personally signed the HUD recertification forms; this lapse directly violated HUD regulations.
On April 18, 2012, Lewis and Desjardins met again with Tam and presented her with a letter terminating her employment. The letter stated that the reason for her termination was "a violation of company policy"; Lewis and Desjardins then verbally explained to Tam that she had violated company policy when she failed to obtain original tenant signatures on the HUD recertification forms.[3] After Tam's departure, the company undertook to fill her position with a candidate who spoke, as Tam did, Mandarin and Cantonese.[4] A previous applicant for a different position within the company declined the position, and the company then placed advertisements in various publications, including a Chinese language newspaper. Desjardins determined that none of the nine candidates who applied for Tam's position possessed the required experience.
In the meantime, in May, 2012, the company temporarily filled the position with Rob Vreeland, a then current employee who had been displaced after a contract expired at another facility managed by the company. Vreeland was a forty-five year old white male, who did not speak Mandarin or Cantonese. Eventually, in June, 2012, after failing to find a qualified candidate from the pool of applicants, the company stopped its search and placed Vreeland permanently into the property manager position.
On April 16, 2015, Tam filed suit against the defendants, alleging discrimination on the basis of race, color, age, and gender in violation of G. L. c. 151B, § 4 (counts I through III), and intentional interference with advantageous business relations (count IV). After an April 17, 2017, hearing, the defendants' motion for summary judgment was allowed. The judge acknowledged the defendants' concession that Tam had established a prima facie case, but found that the defendants had "put forth credible evidence of a legitimate, nondiscriminatory reason for terminating [Tam]'s employment." He concluded that Tam had failed to establish that the defendants' stated reasons for termination were a pretext and therefore allowed the defendants' motion for summary judgment. Tam timely appealed.
Discussion. "We review a grant of summary judgment de novo to determine 'whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.' " DeWolfe v. Hingham Centre, Ltd., 464 Mass. 795, 799 (2013), quoting from Juliano v. Simpson, 461 Mass. 527, 529-530 (2012). The defendants, as the moving parties, have the burden of establishing "that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law." Dias v. Brigham Med. Assocs., 438 Mass. 317, 319 (2002), quoting from Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). Here, we are persuaded that the defendants have done so, as Tam has no reasonable expectation of proving her case at trial. See Ravnikar v. Bogojavlensky, 438 Mass. 627, 629 (2003).
"In order to prevail at trial, an employee bringing a complaint under G. L. c. 151B, § 4, must demonstrate four things: that he or she is a member of a protected class; that he or she was subject to an adverse employment action; that the employer bore 'discriminatory animus' in taking that action; and that that animus was the reason for the action (causation)." Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 680 (2016). To survive a motion for summary judgment, an employee must provide "indirect or circumstantial evidence [of discriminatory animus and causation] using the familiar three-stage, burden-shifting paradigm first set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 805 ... (1973)." Id. at 681, quoting from Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 39-40 (2005).
The defendants concede on appeal that Tam satisfied the first stage of this paradigm by establishing a prima facie case. "In the second stage, the employer can rebut the presumption created by the prima facie case by articulating a legitimate, nondiscriminatory reason for its [employment] decision." Ibid., quoting from Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 441 (1995). We agree with the motion judge that the defendants have met their burden here in providing evidence to support the nondiscriminatory reason for Tam's termination.[5] The burden then shifts back to Tam, requiring her "to provide evidence that 'the employer's articulated justification [for the termination] is not true but a pretext.' " Ibid., quoting from Blare, supra at 443. To prove pretext, Tam must "establish that the basis of [the defendants'] decision was unlawful discrimination 'by adducing evidence that the reasons given by [the defendants] for [their] actions were mere pretexts to hide such discrimination.... This may be accomplished by showing that the reasons advanced by [the defendants] for making the adverse decision are not true.' " Sullivan, 444 Mass. at 54-55, quoting from Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 117 (2000).
We also agree with the motion judge that the evidence Tam now cites on appeal fails to rebut the defendants' proffered reasons for terminating her "and does not, by itself, create reasonable inferences of discriminatory animus and causation."[6] Ibid. As a result, Tam's proof is insufficient to dispute the defendants' consistent contention that her failure to obtain original tenant signatures, in violation of company policy and HUD regulation requirements, warranted nondiscriminatory termination. Because Tam had no expectation of proving pretext at trial, summary judgment was properly granted in the defendants' favor as a matter of law.[7] See DeWolfe, 464 Mass. at 799.
Judgment affirmed.

Tam testified at her deposition, and also admitted in the parties' consolidated undisputed statement of facts, that the defendants explained to her verbally that she was being terminated for failing to obtain original tenant signatures on HUD recertification forms and that she was told of no other reason for her termination.

Many of the tenants at the facility spoke only Mandarin or Cantonese.

The defendants consistently have maintained that the reason for terminating Tam was her failure to obtain original tenant signatures on the HUD recertification forms. As previously noted, at her deposition, and again in the consolidated statement of undisputed material facts, Tam admitted that failure to obtain original signatures was the only reason the defendants gave her for her termination. She also agreed that failure to obtain the signatures was a "serious issue" for which she could be terminated.

Tam now contends that the defendants gave false reasons for her termination. However, she provides no evidentiary support for that contention and she fails to acknowledge her own admissions contained in the summary judgment record. Nor did she present evidence indicating that Lewis or Desjardins did not have a sincere belief that certain tenants did not personally sign these forms.

We agree with the motion judge that Tam's claim for intentional interference with advantageous business relations is a " 'recast version' of her discrimination claims under a common law cause of action." In addition, her argument is unsupported by reasoned analysis or relevant authority. As such, it does not rise to the level of adequate appellate argument as required by Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See Cameron v. Carelli, 39 Mass. App. Ct. 81, 85-86 (1995).